William Catlin, Sr. v. Commissioner.
Catlin v. Commissioner
Docket No. 5901.
United States Tax Court
1946 Tax Ct. Memo LEXIS 204; 5 T.C.M. (CCH) 317; T.C.M. (RIA) 46106; April 29, 1946
Wm. T. Rogers, Esq., and John W. Donahoo, Esq., 801 Florida National Bank Bldg., Jacksonville, Fla., for the petitioner. Edward L. Potter, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves deficiencies in income tax for the calendar years 1940 and 1941 in the respective amounts of $655.10 and $6,457.66. Three issues are raised by the pleadings. They are whether the Commissioner erred: (1) In determining that petitioner's wife was not a partner with him and their adult son during the taxable years; (2) In determining that a salary of $7,200 from the partnership should be included in petitioner's gross income for each year; and (3) In increasing the income of the partnership by disallowing a portion of the amount claimed as a deduction in connection *205 with improvements erected upon rented property. Findings of Fact Petitioner is an individual, residing in Jacksonville, Florida. His income tax returns for the taxable years were filed with the collector of internal revenue for the district of Florida. Petitioner's wife, whose first name does not appear in the record but who is sometimes referred to as B. M. Catlin or Mrs. William Catlin, Sr., also resides in Jacksonville and presumably [1] filed her returns for the same years with the same collector. She will sometimes be referred to herein as Mrs. Catlin. William Catlin, Jr., is a son of petitioner and his wife. He was 30 years of age at the time of the trial. Since 1919 petitioner has been engaged in the new and used car (automobile) business in Jacksonville, first as a salesman and later as a proprietor. In 1922 he was in partnership with another individual. This partnership was dissolved when petitioner purchased his partner's interest near the end of 1922. In 1923 petitioner had financial difficulties which were solved, in large part, by selling his wife's *206 jewelry, which she turned over to him for that purpose. He promised to repay her the amount - approximately $1,000 - when able; but had not done so prior to October 31, 1936. In 1924 or 1925 a corporation known as William Catlin, Inc., was organized for carrying on an automobile business. Most of the capital was furnished by B. K. Hall, who held control of the corporation through a nominee selected by him as office manager and to whom one share of stock had been issued, Hall and Catlin each owning 12 shares. In 1931 petitioner purchased the shares of Hall and the other individual. The corporation operated with some success until in October 1936. During that month petitioner caused the corporation to issue to his wife and William, Jr., 8 1/3 shares each of its capital stock, he retaining a like number of shares. Immediately thereafter the corporation was dissolved and the three individuals executed "Articles of Partnership," agreeing to carry on "the business of buying, selling and otherwise dealing in new and used motor vehicles," parts, etc., in Jacksonville under the firm name of William Catlin & Son. The capital and assets were stated in the agreement to consist of "all of the *207 assets of William Catlin, Inc., now dissolved." The assets had a value of $4,031.30 in excess of liabilities and one-third of this amount ($1,343.76) was shown on the partnership books as the capital contributed by each partner. The partnership agreement specified, inter alia, that the net profits should be divided equally between the partners and that losses should be borne in the same proportion. Nothing was said in the agreement about salaries to the partners. Petitioner, however, had drawn a salary of $600 per month during the existence of the corporation and salary in the same amount was set up on the books of the partnership. William, Jr., also worked for the partnership and salary on the basis of $2,200 per annum was credited to him on the partnership books until he became a member of the armed services in January of 1941. Salaries to the two partners "were paid" [2] - set up on the partnership books - for the fiscal year of the partnership ending October 31, 1939, aggregating $9,235.02, $9,400 for the fiscal year ending October 31, 1940 and $7,550 for the fiscal year ending October 31, 1941. $7,200 of each amount was salary to petitioner. *208 From November 1, 1936, to and including the taxable years petitioner and William, Jr. - petitioner throughout and William, Jr. until he became a member of the armed forces - devoted their entire time to the operation and management of the business. Gross sales, during each of the taxable years, aggregated approximately three-quarters of a million dollars. Mrs. Catlin generally participated little in the business although she rendered some services, especially during 1940 when petitioner was ill and confined to the hospital for two months. During that period she took an active part in the operation and management of the business. She also, from time to time, executed contracts, endorsed notes, and signed other papers on behalf of the partnership. Petitioner considered and treated his wife as a bona fide partner in the business and consulted with her with reference to all important business matters. She was held out to the public as a member of the partnership and was known as such to the tax assessors, to the banks, and to the finance companies. Capital was a material income producing factor, merchandise having a value of as much as a quarter of a million dollars sometimes being *209 on hand. Substantial sums were borrowed from banks. The personal services of petitioner likewise contributed to the production of income and the reasonable value of such services was at least $600 per month. During each of the taxable years petitioner withdrew from the business approximately $600 per month for living expenses. This was disregarded when the income tax returns were prepared for the taxable years now in issue. The three individuals were each credited with one-third of the income of the partnership without allowances for salaries to petitioner and his son. The net worth of the partnership at the end of the fiscal year ending October 31, 1940, as shown by the "Report of Audit" prepared by a firm of certified public accountants, was $32,035.53. A similar report shows its net worth at the end of the fiscal year ending October 31, 1941, to be $59,929.20. In the preparation of both reports the salaries paid (or set up on the books) to petitioner and his son have been treated as expenses of the partnership. In 1940 the partnership leased a vacant lot under an oral contract for three years. It expended the sum of $4,906.21 in erecting improvements of an undisclosed nature. *210 Whether the improvements were, or were not, to become the property of the owner of the lot upon termination of the contract has not been shown. Apparently the improvements were still on the lot and being used by the partnership at the time of the trial in 1945; but whether the rental contract had been renewed or a new one made cannot be determined. The evidence indicates that the improvements were not readily removable although one of them, a "steel shed," could have been removed. The partnership, in the preparation of information returns, deducted one-third of the cost of the improvements or $1,635.36. The Commissioner allowed $245.31, computed at the rate of 5 percent per annum on the total cost in lieu of the amounts claimed. The Commissioner determined that "for income tax purposes Mrs. William Catlin, Sr. was not a member of the partnership and that no part of the partnership income is properly taxable to her." He also determined that the salaries to petitioner and his son, referred to above, were deductible in computing the income of the partnership but that the amount allocated to petitioner for each year ($7,200) should be included in his gross income. Accordingly $7,309.83 *211 was added to petitioner's net income for 1940 and $15,944.13 was added to his net income for 1941. Opinion As to the first question for decision in this case pertaining to whether or not this family partnership between petitioner and his wife was such a partnership as to be recognized for income tax purposes, a question so nearly on all fours with the pending case, was decided by the Tax Court very recently, being that of (promulgated April 10, 1946), as to make additional citations unnecessary. Additional reference is made, however, to the recent cases of (promulgated April 12, 1946); also the case of (promulgated April 8, 1946). It is therefore determined, in conformity with the Akers case, that the partnership between the petitioner and his wife is not to be recognized for tax purposes. As to the second question involved, being the inclusion of $7,200 withdrawn by petitioner from the partnership at the rate of $600 per month during the taxable year, the evidence discloses that petitioner, when the sole owner of the corporation which preceded the *212 partnership, was paid a similar amount under identical bookkeeping methods and that this system continued for a number of years after the partnership was formed. The facts here shown that the salary was actually paid to or withdrawn by petitioner, and there is no indication that there was any objection from any party in interest as to its payment or withdrawal, or that any such party had any proper basis for making such objection. Even though payments made to a partner for services rendered are not, under the law and regulations, deductible in determining partnership net income, they are nevertheless held to represent a part of the partner's share of partnership profits, see section 19.183-1 of Regulations 103, and we know of no rule which requires elimination of such payments from the partner's gross income merely because the partnership agreement is silent on the payment of salary. The determination of the Commissioner on this point is sustained. As to the rejection by the Commissioner of all claimed depreciation on the buildings erected on the leased property in excess of five percent per annum, the testimony of the petitioner is most vague both as to the nature of the buildings *213 and the terms of the lease. On the point as to whether or not the buildings would be the property of the lessor or the lessee at the end of the lease, the lease being verbal and the lessor not being called upon to give any evidence whatsoever, we are constrained to hold that the determination of the Commissioner on this point has not been overcome by a preponderance of the evidence. For the foregoing reasons Judgment will be entered for the respondent. Footnotes
1. The evidence does not show whether she filed returns or not; but the implication is clear that she did.↩
2. The audit report states they were paid; but the evidence indicates they may only have been set up on the partnership books.↩